**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| **FLORENCE CRAMER,** | **COMPLAINT AND** |
|                 **Plaintiff,** | **JURY DEMAND** |
| **v.** | **No. 1:20-cv-95** |
| **ETHICON, INC. and JOHNSON &** | |
| **JOHNSON,** | |
|               **Defendants.** | |

## CIVIL ACTION COMPLAINT

Plaintiff, FLORENCE CRAMER ("Plaintiff"), by and through her counsel, brings this Complaint to set forth against Defendants' ETHICON, INC., and JOHNSON & JOHNSON (collectively, "Defendants'", as the context may require) for injuries suffered as a result of the implantation of defective pelvic mesh products designed, manufactured and marketed by Defendants'. In support, Plaintiff states and avers as follows:

## PARTIES

1. Plaintiff Florence Cramer, is, and was, at all relevant times, a citizen and resident of the state of North Carolina, County of Henderson.

2. Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

3. Defendant, Ethicon, Inc. is a wholly owned subsidiary of Defendant Johnson & Johnson and is incorporated in the state of New Jersey with its principal place of business in Somerville, New Jersey.

4. Defendants ETHICON, INC. and JOHNSON & JOHNSON share many of the same officers, directors and operations; and maintain ownership in the assets and/or liabilities

relating to the design, manufacture, marketing, distribution and sale of the medical device line at issue in this litigation and shall be referenced collectively hereinafter as "Defendants".

5.    All acts and omissions of each Defendant as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

## JURISDICTION AND VENUE

6.    Damages sought in this matter are in excess of $75,000.00. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

7.    This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.    Venue on remand is proper in the Western District Court of North Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1332 by virtue of the fact that (a) a substantial part of the events or omissions giving rise to the claims occurred in this District and (b) Defendants' products are sold to and consumed by individuals in the State of North Carolina, thereby subjecting Defendants to personal jurisdiction in this action and making them all "residents" of this judicial District.

10.    Defendants conducted substantial business in the State of North Carolina and in this District, distribute Pelvic Mesh Products in this District, receive substantial compensation and profits from sales of Pelvic Mesh Products in this District, and made material omissions and misrepresentations and breaches of warranties in this District so as to subject them to *in personam* jurisdiction in this District.

11.     Defendants conducted business in the State of North Carolina through sales representatives conducting business in the State of North Carolina and because Defendants were engaged in testing, developing, manufacturing, labeling, marketing, distributing, promotion and/or selling, either directly or indirectly, and/or through third parties or related entities, Pelvic Mesh Products; thus, there exists a sufficient nexus between Defendant forum contacts and the Plaintiff's claims to justify assertion of jurisdiction in North Carolina.

12.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court has *in personam* jurisdiction over Defendants, because Defendants are present in the State of North Carolina such that requiring an appearance does not offend traditional notices of fair play and substantial justice.

## II.   DEFENDANTS' PELVIC MESH PRODUCTS

13.     In or about October, 2002, the Defendants began to market and sell a product known as Gynemesh, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence.  All references to Gynemesh include all variations of or names used for Gynemesh, including but not limited to Gynemesh PS.

14.     Gynemesh was derived from a product known as Prolene Mesh, which was used in the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. Prolene Mesh was derived from Defendants' prolene mesh hernia product, and was and is utilized in the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence.  All references to Prolene Mesh include all variations of Prolene Mesh, including but not limited to Prolene Soft Mesh.

15.     In or about September, 2005, the Defendants began to market and sell a product known as Prolift, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. The Prolift was and is offered as an anterior,

posterior, or total repair system, and all references to the Prolift include by reference all variations.

16.    In or about May, 2008, the Defendants began to market and sell a product known as Prolift+M, for the treatment of medical conditions in the female pelvis, primarily pelvic organ prolapse and stress urinary incontinence. The Prolift+M was and is offered as an anterior, posterior, or total repair system, and all references to the Prolift+M include by reference all variations.

17.    The Defendants market and sell a product known as TVT, for the treatment of stress urinary incontinence in females. The TVT has been and is offered in multiple variations including, but not limited to, the TVT, TVT-O, and TVT-S, and all references to the TVT include by reference all variations.

18.    The products known as Prolene Mesh, Gynemesh,, Prolift, Prolift+M, and TVT, as well as any as yet unidentified pelvic mesh products designed and sold for similar purposes, inclusive of the instruments and procedures for implantation, are collectively referenced herein as Defendants' Pelvic Mesh Products or the Pelvic Mesh Products.

19.    Defendants' Pelvic Mesh Products were designed, patented, manufactured, labeled, marketed, and sold and distributed by the Defendants, at all times relevant herein.

## FACTUAL BACKGROUND

20.    On April 2, 2007, Plaintiff was implanted with an Ethicon/Johnson & Johnson TVT-O ("Pelvic Mesh Products", "Pelvic Mesh Product", and/or "Product") during surgery performed at Margaret R. Pardee Memorial Hospital in Hendersonville, North Carolina.

21.    The Pelvic Mesh Products were implanted in Plaintiff to treat her urinary incontinence, the use for which the Pelvic Mesh Products were designed, marketed and sold.

22.    On April 25, 2017, Plaintiff underwent revision surgery of the Ethicon/Johnson & Johnson TVT-O mesh product at Park Ridge Health in Hendersonville, North Carolina.

23. As a result of having the Product implanted in her, Plaintiff has experienced significant mental and physical pain and suffering, has sustained permanent injury and permanent and substantial physical deformity and has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses.

24. Defendants' Pelvic Mesh Product has been and continues to be marketed to the medical community and to patients as a safe, effective, reliable, medical device; implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, primarily pelvic organ prolapse and stress urinary incontinence, and as safer and more effective as compared to the traditional products and procedures for treatment, and other competing pelvic mesh products.

25. The Defendants have marketed and sold the Defendants' Pelvic Mesh Product to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and include the provision of valuable consideration and benefits to health care providers. Also utilized are documents, brochures, websites, and telephone information lines, offering exaggerated and misleading expectations as to the safety and utility of the Defendants' Pelvic Mesh Product.

26. Contrary to the Defendants' representations and marketing to the medical community and to the patients themselves, the Defendants' Pelvic Mesh Product has high failure, injury, and complication rates, fails to perform as intended, requires frequent and often debilitating re-operations, and has caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Plaintiff.

27. The Defendants have consistently underreported and withheld information about

the propensity of Defendants' Pelvic Mesh Product to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Product, through various means and media, actively and intentionally misleading the FDA, the medical community, patients, and the public at large.

28.    Defendants have known and continue to know that their disclosures to the FDA were and are incomplete and misleading; and that the Defendants' Pelvic Mesh Product was and is causing numerous patients severe injuries and complications. The Defendants suppressed this information, and failed to accurately and completely disseminate or share this and other critical information with the FDA, health care providers, or the patients. As a result, the Defendants actively and intentionally misled and continue to mislead the public, including the medical community, health care providers and patients, into believing that the Defendants' Pelvic Mesh Product was and is safe and effective, leading to the prescription for and implantation of the Pelvic Mesh Product into the Plaintiff.

29.    Defendants failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of the Defendants' Pelvic Mesh Product.

30.    Defendants failed to design and establish a safe, effective procedure for removal of the Defendants' Pelvic Mesh Product; therefore, in the event of a failure, injury, or complications it is impossible to easily and safely remove the Defendants' Pelvic Mesh Product.

31.    Feasible and suitable alternative designs as well as suitable alternative procedures and instruments for implantation and treatment of stress urinary incontinence, pelvic organ prolapse, and similar other conditions have existed at all times relevant as compared to the Defendants' Pelvic Mesh Product.

32.    The Defendants' Pelvic Mesh Product was at all times utilized and implanted in a manner foreseeable to the Defendants.

33.     The Defendants have at all times provided incomplete, insufficient, and misleading training and information to physicians, in order to increase the number of physicians utilizing the Defendants' Pelvic Mesh Product, and thus increase the sales of the Product, and also leading to the dissemination of inadequate and misleading information to patients, including Plaintiff.

34.     The Pelvic Mesh Product implanted into the Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendants, and in the condition directed by and expected by the Defendants.

35.     The injuries, conditions, and complications suffered due to Defendants' Pelvic Mesh Product include but are not limited to mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia, blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, pelvic pain, urinary and fecal incontinence, prolapse of organs, and in many cases the women have been forced to undergo intensive medical treatment, including but not limited to operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia, and injuries to Plaintiff's intimate partners.

36.     Despite Defendants' knowledge of these catastrophic injuries, conditions, and complications caused by their Pelvic Mesh Product, the Defendants have, and continue to manufacture, market, and sell the Product, while continuing to fail to adequately warn, label, instruct, and disseminate information with regard to the Defendants' Pelvic Mesh Product, both prior to and after the marketing and sale of the Product.

## COUNT I
## FAILURE TO WARN (N.C.G.S. § 99B-5)

37.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

38.     The Defendants failed to properly and adequately warn and instruct the Plaintiff and her health care providers as to the proper candidates, and the safest and most effective methods of implantation and use of the Defendants' Pelvic Mesh Product.

39.     The Defendants failed to properly and adequately warn and instruct the Plaintiff and her health care providers as to the risks and benefits of the Defendants' Pelvic Mesh Product, given the Plaintiff's conditions and need for information.

40.     The Defendants failed to properly and adequately warn and instruct the Plaintiff and her health care providers with regard to the inadequate research and testing of the Pelvic Mesh Product, and the complete lack of a safe, effective procedure for removal of the Pelvic Mesh Product.

41.     In addition, the Pelvic Mesh Products were defective due to the lack of necessary and appropriate warnings regarding, but not limited to, the following:

a)     the Products' propensities to contract, retract, and/or shrink inside the body;

b)     the Products' propensities for degradation, fragmentation, disintegration and/or creep;

c)     the Products' inelasticity preventing proper mating with the pelvic floor and vaginal region;

d)     the rate and manner of mesh erosion or extrusion;

e)     the risk of chronic inflammation resulting from the Products;

f)     the risk of chronic infections resulting from the Products;

g)     the risk of permanent vaginal or pelvic scarring as a result of the Products;

h)     the risk of recurrent, intractable pelvic pain and other pain resulting from the Products;

i)     the need for corrective or revision surgery to adjust or remove the Products;

j)     the severity of complications that could arise as a result of implantation of the Products;

k) the hazards associated with the Products;

l) the Products' defects described herein;

m) treatment of pelvic organ prolapse and stress urinary incontinence with the Products is no more effective than feasible available alternatives;

n) treatment of pelvic organ prolapse and stress urinary incontinence with the Products exposes patients to greater risk than feasible available alternatives;

o) treatment of pelvic organ prolapse and stress urinary incontinence with the Products makes future surgical repair more difficult than feasible available alternatives;

p) use of the Products puts the patient at greater risk of requiring additional surgery than feasible available alternatives;

q) removal of the Products due to complications may involve multiple surgeries and may significantly impair the patient's quality of life; and

r) complete removal of the Products may not be possible and may not result in complete resolution of the complications, including pain.

42. The Defendants intentionally, recklessly, and maliciously misrepresented the safety, risks, and benefits of the Defendants' Pelvic Mesh Product, understating the risks and exaggerating the benefits in order to advance their own financial interests, with wanton and willful disregard for the rights and health of the Plaintiff.

43. As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Pelvic Mesh Product, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

44. The Defendants are strictly liable in tort to the Plaintiff for their wrongful conduct.

WHEREFORE, Plaintiffs demand judgment against Defendants of compensatory damages, punitive damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems equitable and just.

**COUNT II**

## **NEGLIGENCE**

45.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

46.     Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, and distribution of the Defendants' Pelvic Mesh Product, and recruitment and training of physicians to implant the Pelvic Mesh Product.

47.     Defendants breached their duty of care to the Plaintiff, as aforesaid, in the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution, and recruitment and training of physicians to implant the Pelvic Mesh Product.

48.     Defendants under-reported, underestimated and downplayed the serious dangers of the Products.

49.     Despite the fact that Defendants knew or should have known that the Products caused unreasonably dangerous side effects, Defendants continued to market, manufacture, distribute and/or sell the Products to consumers, including the Plaintiff.

50.     Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

51.     As a proximate result of the Defendants' design, manufacture, labeling, marketing, sale, and distribution of the Pelvic Mesh Product, Plaintiff has been injured, often catastrophically, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court

deems equitable and just.

<u>**COUNT III**</u>
<u>**NEGLIGENT MISREPRESENTATION**</u>

52.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

53.     Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiff, and the public, that the Pelvic Mesh Product had not been adequately tested and found to be safe and effective for the treatment of incontinence and prolapse. The representations made by Defendants, in fact, were false.

54.     Defendants failed to exercise ordinary care in the representations concerning the Pelvic Mesh Product while they were involved in their manufacture, sale, testing, quality assurance, quality control, and distribution in interstate commerce, because Defendants negligently misrepresented the Pelvic Mesh Product's high risk of unreasonable, dangerous, adverse side effects.

55.     Defendants breached their duty in representing that the Defendants' Pelvic Mesh Product has no serious side effects different from older generations of similar products and/or procedures to Plaintiff, Plaintiff's physicians, and the medical and healthcare community.

56.     Defendants made the aforesaid representations with no reasonable ground for believing them to be true when Defendants owned data showing the Products to be defective and dangerous when used in their intended manner.

57.     These representations were made to the physicians prescribing the use of the Products prior to the date they were prescribed to Plaintiff and used by her physicians with the intent that Plaintiff and her physicians rely upon such misrepresentations about the safety and efficacy of the Products. Plaintiff and her physician did reasonably rely upon such representations

that the Products were safe for their use to treat stress urinary incontinence and pelvic organ prolapse.

58.     As a foreseeable, direct and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that the Pelvic Mesh Product had been insufficiently tested, or had not been tested at all, and that it lacked adequate and accurate warnings, and that it created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented risk, of adverse side effects, including, erosion, pain and suffering, surgery to remove the products, and other severe and personal injuries, which are permanent and lasting in nature.

59.     As a proximate result of the Defendants' conduct, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT IV
## DESIGN DEFECT (N.C.G.S. § 99B-6)

60.     Plaintiff realleges and incorporates by refence ever allegation of this Complaint as if each were set forth fully and completely herein.

61.     At all times herein mentioned, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Products as hereinabove described that was used by the Plaintiff.

62.     That the Products were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

63.     At those times, the Products were not reasonably safe for its intended use and was defective as a matter of law with respect to its design.

64.     At all times herein mentioned, the Products were in a defective condition and was not reasonably safe, and Defendants knew or had reason to know that said Products were defective and unsafe, especially when used in the form and manner as provided by the Defendants.

65.     Defendants knew, or should have known, that at all times herein mentioned its Products were in a defective condition and was and is inherently dangerous and unsafe.

66.      Defendants with this knowledge voluntarily designed its Products in dangerous condition for use by the public, and in particular the Plaintiff.

67.     Defendants had a duty to create Products that were not unreasonably dangerous for its normal, intended use.

68.     Defendants created Products that were unreasonably dangerous for their normal, intended use.

69.     The Products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were manufactured defectively in that the Products left the hands of Defendants in a defective condition and were unreasonably dangerous to its intended users.

70.     The Products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants' Products were manufactured.

71. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed defective products which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by the Plaintiff.

72. The Plaintiff could not by the exercise of reasonable care, have discovered the Products' defects herein mentioned or perceived their danger.

73. The Products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings or instructions as the Defendants knew or should have known that the Products created a high risk of unreasonable, dangerous side effects, severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

74. By reason of the foregoing, the Defendants have become liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of defective products.

75. As a proximate result of the Defendants' conduct, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT V
## MANUFACTURING DEFECT

76.     Plaintiff reallege and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

77.     The Products implanted in Plaintiff were not reasonably safe for their intended use and were defective as a matter of law with respect to its manufacture.

78.     The Products implanted in Plaintiff were not reasonably safe at the time the Products left control of the Defendants.

79.     As a proximate result of the Defendants' conduct, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

80.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

81.     At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold the Defendants' Pelvic Mesh Product.

82.     At all relevant times, Defendants intended that the Defendants' Pelvic Mesh Product be used in the manner that Plaintiff in fact used it and Defendants expressly warranted that the product was safe and fit for use by consumers, that it was of merchantable quality, that its side

effects were minimal and comparable to other pelvic mesh products, and that it was adequately tested and fit for its intended use.

83.     Defendants made assurances to the general public, hospitals and health care professionals that the Products were safe and reasonably fit for their intended purposes.

84.     Plaintiff and/or health care provider chose the Products based upon Defendants' warranties and representations regarding the safety and fitness of the Products.

85.     Plaintiff, individually and/or by and through her physician, reasonably relied upon Defendants' express warranties and guarantees that the Products were safe, merchantable, and reasonably fit for their intended purposes.

86.     Defendants breached these express warranties in violation of North Carolina General Statute §25-2-313, and North Carolina common law because the Products implanted in Plaintiff were unreasonably dangerous and defective and not as Defendants has represented.

87.     At all relevant times, Defendants were aware that consumers, including Plaintiff, would use the Pelvic Mesh Product; which is to say that Plaintiff was a foreseeable user of the Defendants' Pelvic Mesh Product.

88.     Plaintiff and/or her implanting physicians were at all relevant times in privity with Defendants.

89.     The Defendants' Pelvic Mesh Product was expected to reach and did in fact reach consumers, including Plaintiff and her implanting physicians, without substantial change in the condition in which it was manufactured and sold by Defendants.

90.     Defendants breached various express warranties with respect to the Pelvic Mesh Product including the following particulars:

        a)  Defendants represented to Plaintiff and her physicians and healthcare providers
            through its labeling, advertising, marketing materials, detail persons, seminar

presentations, publications, notice letters, and regulatory submissions that the Defendants' Pelvic Mesh Product was safe and fraudulently withheld and concealed information about the substantial risks of serious injury associated with using the Pelvic Mesh Product;

b) Defendants represented to Plaintiff and her physicians and healthcare providers that the Defendants' Pelvic Mesh Product was as safe, and/or safer than other alternative procedures and devices and fraudulently concealed information, which demonstrated that the Product was not safer than alternatives available on the market; and

c) Defendants represented to Plaintiff and her physicians and healthcare providers that the Defendants' Pelvic Mesh Product was more efficacious than other alternative medications and fraudulently concealed information, regarding the true efficacy of the product.

91.     In reliance upon Defendants' express warranty, Plaintiff was implanted with the Defendants' Pelvic Mesh Product as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

92.     At the time of making such express warranties, Defendants knew or should have known that the Defendants' Pelvic Mesh Product does not conform to these express representations because the Defendants' Pelvic Mesh Product was not safe and had numerous serious side effects, many of which Defendants did not accurately warn about, thus making the Defendants' Pelvic Mesh Product unreasonably unsafe for its intended purpose.

93.     Defendants breached their express warranties to Plaintiff in that the Defendants' Pelvic Mesh Product was not of merchantable quality, safe and fit for its intended uses, nor was it adequately tested.

94.     As a proximate result of the Defendants' conduct, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT VII
## BREACH OF IMPLIED WARRANTY

95.     Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

96.     At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold the Defendants' Pelvic Mesh Product.

97.     At all relevant times, Defendants intended that the Defendants' Pelvic Mesh Product be implanted for the purposes and in the manner that Plaintiff or Plaintiff's implanting physicians in fact used it and Defendants impliedly warranted the product to be of merchantable quality, safe and fit for such use, and was not adequately tested.

98.     Defendants were aware that consumers, including Plaintiff or Plaintiff's physicians, would implant the Defendants' Pelvic Mesh Product in the manner directed by the instructions for use; which is to say that Plaintiff was a foreseeable user of the Defendants' Pelvic Mesh Product.

99.     Plaintiff and/or her physicians were at all relevant times in privity with Defendants.

100.    Defendants breached these implied warranted in violation of North Carolina General Statutes §§ 25-2-314; 25-2-315 and North Carolina common law of merchantability because the Products implanted in Plaintiff were neither merchantable nor suited for their intended uses as

warranted.

101.  The Defendants' Pelvic Mesh Product was expected to reach and did in fact reach consumers, including Plaintiff or Plaintiff's physicians, without substantial change in the condition in which it was manufactured and sold by Defendants.

102.  Defendants breached various implied warranties with respect to the Defendants' Pelvic Mesh Product, including the following particulars:

   a)  Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the Defendants' Pelvic Mesh Product was safe and fraudulently withheld and concealed information about the substantial risks of serious injury associated with using the Pelvic Mesh Product;

   b)  Defendants represented that the Defendants' Pelvic Mesh Product was safe, and/or safer than other alternative devices or procedures and fraudulently concealed information, which demonstrated that the Defendants' Pelvic Mesh Product was not as safe or safer than alternatives available on the market; and

   c)  Defendants represented that the Defendants' Pelvic Mesh Product was more efficacious than alternative pelvic mesh products and procedures and fraudulently concealed information, regarding the true efficacy of the Defendants' Pelvic Mesh Product.

103.  In reliance upon Defendants' implied warranty, Plaintiff used the Pelvic Mesh Product as prescribed and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

104.  Defendants breached their implied warranty to Plaintiff in that the Defendants' Pelvic Mesh Product was not of merchantable quality, safe and fit for its intended use, or

adequately tested.

105.    As a proximate result of the Defendants' conduct, Plaintiff has been injured, often catastrophically, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

<u>COUNT VIII</u>
<u>VIOLATION OF NORTH CAROLINA CONSUMER</u>
<u>FRAUD AND DECEPTIVVE BUSINESS PRACTICES</u>
<u>ACT</u>

106.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

107.    Unfair methods of competition and unfair or deceptive acts or practices are defined and declared unlawful by the consumer protection laws.

108.    Plaintiff purchased and used the Defendants' Pelvic Mesh Product primarily for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

109.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for the Defendants' Pelvic Mesh Product, and would not have incurred related medical costs and injury.

110.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiff for the Pelvic Mesh Product that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

111.     Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

    a)      Representing that goods or services has characteristics, ingredients, uses benefits or quantities that they do not have;

    b)      Advertising goods or services with the intent not to sell them as advertised; and,

    c)      Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

112.     Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create demand for and sell the Defendants' Pelvic Mesh Product. Each aspect of Defendants' conduct combined to artificially create sales of the Defendants' Pelvic Mesh Product.

113.     Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of the Defendants' Pelvic Mesh Product.

114.     Had Defendants not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the Product, and would not have incurred related medical costs.

115.     Defendants conduct in connection with their sale of their Products is impermissible and illegal in that it created a likelihood of confusion or misunderstanding, because Defendants mislead, falsely and/or deceptively misrepresented, and/or omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of the Products.

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations.

117.    As a result of violating North Carolina General Statutes §§ 75-1.1 and 106-138, Plaintiff has incurred serious physical injury, pain and suffering, loss of income, loss of opportunity and medical, hospital and surgical expenses and other expenses related to the diagnosis and treatment thereof, for which Defendants are liable.

118.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

119.    Defendants had actual knowledge of the defective and dangerous condition of the Defendants' Pelvic Mesh Product and failed to take any action to cure such defective and dangerous conditions.

120.    Plaintiff and the medical community relied upon Defendants' misrepresentations and omissions in determining which product and/or procedure to undergo and/or perform (if any).

121.    Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, constituted unfair and deceptive acts and practices.

122.    By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

123.    As a direct and proximate result of Defendants' violations of the states' consumer protection laws, Plaintiff has sustained economic losses and other damages and is entitled to statutory and compensatory, damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request restitution and disgorgement of

profits, together with interest, cost of suit, attorneys' fees, and all such other and further relief as this Court deems just and proper.

## COUNT IX
## FRAUD

124.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

125.    Defendant falsely and fraudulently represented to Plaintiff, her physicians, and to members of the general public that the aforesaid Products were safe, effective, reliable, consistent, and better than other similar pelvic repair procedures when used in the manner intended by the manufacturer. The representations by Defendant were, in fact, false. The true facts include, but are not limited to, that the Products were not safe for the treatment of stress urinary incontinence or pelvic organ prolapse and were, in fact, dangerous to the health and body of Plaintiff.

126.    When Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiff, and with the intent to induce Plaintiff to act in a manner herein alleged, that is to use the Products for treatment of her stress urinary incontinence and pelvic organ prolapse.

127.    At the time Defendants made such representations and Plaintiff took the actions herein alleged, Plaintiff and her physicians were ignorant to the falsity of these representations and reasonably believed them to be true. In reliance upon such representations, Plaintiff was induced to and did use Defendants' Products. Had Plaintiff known the actual facts, she would not have taken such action. The reliance of Plaintiff and her physicians upon Defendants' representations were justified because said representations were made by individuals and entities who appeared to be in a position to know true facts.

128.    As a result of Defendants' fraud and deceit, Plaintiff was and/or still is caused to

suffer severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

129.    In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT X
## FRAUD BY
## CONCEALMENT

130.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

131.    At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff and to her physicians, the true facts concerning their Products, that is, that said Products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal use, and how likely they were to cause serious consequences to users including permanent and debilitating injuries. Defendants made the affirmative representations as set forth above to Plaintiff and her physicians and the general public prior to the date the Products were implanted in Plaintiff, while concealing material facts.

132. At all times herein mentioned, Defendants willfully and maliciously concealed facts, as set forth above, from Plaintiff and her physicians with the intent to defraud.

133. At all times herein mentioned, neither Plaintiff or her physicians were are of the facts sent forth above, and had they been aware of said facts, they would not have acted as they did, that is, they would not have reasonably relied upon said representations of safety and efficacy and would not have utilized the Products to treat stress urinary incontinence or pelvic organ prolapse. Defendants' representations were a substantial factor in Plaintiff's decision to utilize said Products for treatment of her medical conditions.

134. As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages and other damages.

135. In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### COUNT XI
### PUNITIVE DAMAGES
### (N.C. Gen. Stat. § 1D-15)

136. Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

137. At all times relevant hereto, Defendants knew or should have known that the Defendants' Pelvic Mesh Product was inherently more dangerous with respect to the risks of erosion, failure, pain and suffering, loss of life's enjoyment, remedial surgeries and treatments in an effort to cure the conditions proximately related to the use of the product, as well as other severe and personal injuries which are permanent and lasting in nature.

138. At all times material hereto, Defendants attempted to misrepresent and did misrepresent facts concerning the safety of the Defendants' Pelvic Mesh Product.

139. Defendants' misrepresentation included knowingly withholding material information from the medical community and the public, including Plaintiff, concerning the safety and efficacy of the Defendants' Pelvic Mesh Product.

140. At all times material hereto, Defendants knew and recklessly disregarded the fact that the Defendants' Pelvic Mesh Product causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods products and/or procedures and/or treatment.

141. At all times material hereto, Defendants knew and recklessly disregarded the fact that the Defendants' Pelvic Mesh Product causes debilitating and potentially lethal side effects with greater frequency than safer alternative products and/or methods of treatment and recklessly failed to advise the FDA of same.

142. At all times material hereto, Defendants intentionally misstated and misrepresented data and continue to misrepresent data so as to minimize the risk of injuries caused by the Defendants' Pelvic Mesh Product.

143. Notwithstanding the foregoing, Defendants continue to aggressively market the Defendants' Pelvic Mesh Product to consumers, without disclosing the true risk of side effects

when there were safer alternatives.

144.    Defendants knew of the Defendants' Pelvic Mesh Product defective and unreasonably dangerous nature, but continued to manufacture, produce, assemble, market, distribute, and sell the Defendants' Pelvic Mesh Product so as to maximize sales and profits at the expense of the health and safety of the Public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by the Defendants' Pelvic Mesh Product.

145.    Defendants continue to intentionally conceal and/or recklessly and/or grossly negligently fail to disclose to the public, including Plaintiff, the serious side effects of the Defendants' Pelvic Mesh Product in order to ensure continued and increased sales.

146.    Defendants' intentionally reckless and/or grossly negligent failure to disclose information deprived Plaintiff of necessary information to enable her to weigh the true risks of using the Defendants' Pelvic Mesh Product against her benefit.

147.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff has required and will require health care and services, and has incurred medical, health care, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical care and/or hospital care and medical services.

148.    Defendants have engaged in conduct entitling Plaintiff to an award of punitive damages pursuant to Common Law principles and N.C. Gen. Stat. § 1D-15.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and request compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, and each of them,

individually, jointly and severally and requests compensatory damages, together with interest, cost

of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

A.  All general, statutory, and compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all injuries and damages, both past and present;

B.  All special and economic damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of her injuries and damages, pain and suffering;

C.  Attorneys' fees, expenses, and costs of this action;

D.  Double or triple damages as allowed by law;

E.  Punitive and/or exemplary damages;

F.  Pre-judgment and post-judgment interest in the maximum amount allowed by land; and

G.  Such further relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated this 20th day of April, 2020.

*Respectfully Submitted,*

By:   */s/ Whitney Jo Butcher*
Whitney Jo Butcher
WHITLEY LAW FIRM
3301 Benson Drive Suite 120
Raleigh, NC 27609
919-785-5000
Email: wjb@whitleylawfirm.com

*/s/ Dana Lizik*
Dana Lizik (*Pro Hac Vice to be Filed*)
JOHNSON LAW GROUP
Texas State Bar No. 24098007
2925 Richmond Avenue, Suite 1700
Houston, Texas 77098
(713) 626-9336
(713) 583-9460 (facsimile)
Email: dlizik@johnsonlawgroup.com

*Attorneys for Plaintiff*